UNITED STATES DISTRICT COURT
DISTRICT OF IDAHO

| | |
|---|---|
| YVONNE T., <br><br> Plaintiff, <br><br> vs. <br><br> COMMISSIONER OF SOCIAL SECURITY, <br><br> Defendant. | Case No.: 1:24-cv-00567-AKB-REP <br><br> **REPORT AND RECOMMENDATION** |

Pending is Plaintiff Yvonne T.'s Complaint for Review of Social Security (Dkt. 1), appealing the Social Security Administration's denial of her disability claim. This action is brought pursuant to 42 U.S.C. § 405(g). Having carefully considered the record and otherwise being fully advised, the undersigned enters the following Report and Recommendation.

## I. ADMINISTRATIVE PROCEEDINGS

On September 23, 2022, Plaintiff protectively filed a Title II application for a period of disability and disability insurance benefits. Plaintiff also filed a Title XVI application for supplemental security income on April 20, 2023. In both applications, Plaintiff alleged disability beginning May 1, 2021. These claims were originally denied on January 26, 2023, and again on reconsideration on April 19, 2023. On or around April 24, 2023, Plaintiff filed a Request for Hearing before an Administrative Law Judge ("ALJ"). On November 29, 2023, ALJ Luke Brennan held a hearing in Boise, Idaho, at which time Plaintiff, represented by attorney Jacob Alma Bernhardt, appeared and testified. William Tysdal, an impartial vocational expert, also appeared and testified at the same hearing.

On January 24, 2024, the ALJ issued a decision denying Plaintiff's claims, finding that she was not disabled within the meaning of the Social Security Act. Plaintiff timely requested

**REPORT AND RECOMMENDATION - 1**

review from the Appeals Council. On September 24, 2024, the Appeals Council denied Plaintiff's Request for Review, making the ALJ's decision the final decision of the Commissioner of Social Security.

Having exhausted her administrative remedies, Plaintiff brings this case. She contends that the ALJ's decision is not supported by substantial evidence. Specifically, Plaintiff argues that the ALJ's residual functional capacity assessment ("RFC") is legally deficient because (i) the ALJ did not properly evaluate the opinion evidence of record, and (ii) the ALJ failed to properly assess her subjective symptoms. Pl.'s Brief at 1, 7-15 (Dkt. 23). Plaintiff requests that the Court either reverse the ALJ's decision and find that she is entitled to benefits, or remand the case for further proceedings. *Id*. at 1, 15; *see also* Compl. at 3 (Dkt. 1).

## II.  STANDARD OF REVIEW

To be upheld, the Commissioner's decision must be supported by substantial evidence and based on proper legal standards. 42 U.S.C. § 405(g); *Trevizo v. Berryhill*, 871 F.3d 664 (9th Cir. 2017). Findings as to any question of fact, if supported by substantial evidence, are conclusive. *See* 42 U.S.C. § 405(g). If there is substantial evidence to support the ALJ's factual decisions, they must be upheld, even when there is conflicting evidence. *See Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1098 (9th Cir. 2014).

"Substantial evidence" is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Ludwig v. Astrue*, 681 F.3d 1047, 1051 (9th Cir. 2012). The standard requires more than a scintilla but less than a preponderance. *Trevizo*, 871 F.3d at 674. It "does not mean a large or considerable amount of evidence." *Pierce v. Underwood*, 487 U.S. 552, 565 (1988).

With respect to questions of fact, the Court is to review the record as a whole to decide whether it contains evidence that would allow a reasonable mind to accept the conclusions of the

**REPORT AND RECOMMENDATION - 2**

ALJ.  *Richardson*, 402 U.S. at 401; *see also Ludwig*, 681 F.3d at 1051.  The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities.  *Treichler*, 775 F.3d at 1098.  Where the evidence is susceptible to more than one rational interpretation, the reviewing court must uphold the ALJ's findings if they are supported by inferences reasonably drawn from the record.  *Ludwig*, 681 F.3d at 1051.  In such cases, the reviewing court may not substitute its judgment or interpretation of the record for that of the ALJ.  *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1196 (9th Cir. 2004).

The decision must be based on proper legal standards and will be reversed for legal error.  *Zavalin v. Colvin*, 778 F.3d 842, 845 (9th Cir. 2015).  Considerable weight is given to the ALJ's construction of the Social Security Act.  *See Vernoff v. Astrue*, 568 F.3d 1102, 1105 (9th Cir. 2009).  However, this Court "will not rubber-stamp an administrative decision that is inconsistent with the statutory mandate or that frustrates the congressional purpose underlying the statute."  *Smith v. Heckler*, 820 F.2d 1093, 1094 (9th Cir. 1987).

### III.  REPORT

**A.   Sequential Process**

In evaluating the evidence presented at an administrative hearing, the ALJ must follow a sequential process in determining whether a person is disabled in general (20 C.F.R. §§ 404.1520, 416.920) – or continues to be disabled (20 C.F.R. §§ 404.1594, 416.994) – within the meaning of the Social Security Act.

The first step requires the ALJ to determine whether the claimant is engaged in substantial gainful activity ("SGA").  20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i).  SGA is work activity that is both substantial and gainful.  20 C.F.R. §§ 404.1572, 416.972.  "Substantial work activity" is work activity that involves doing significant physical or mental activities.  20 C.F.R. §§ 404.1572(a), 416.972(a).  "Gainful work activity" is work that is usually done for pay

**REPORT AND RECOMMENDATION - 3**

or profit, whether or not a profit is realized. 20 C.F.R. §§ 404.1572(b), 416.972(b). If the claimant has engaged in SGA, disability benefits are denied regardless of her medical condition, age, education, and work experience. 20 C.F.R. §§ 404.1520(b), 416.920(b). If the claimant has not engaged in SGA, the analysis proceeds to the second step. Here, the ALJ found that Plaintiff had not engaged in SGA since May 1, 2021 (the alleged onset date). AR 24.

The second step requires the ALJ to determine whether the claimant has a medically determinable impairment, or combination of impairments, that is severe and meets the duration requirement. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). An impairment or combination of impairments is "severe" within the meaning of the Social Security Act if it significantly limits an individual's physical or mental ability to perform basic work activities. 20 C.F.R. §§ 404.1520(c), 416.920(c). An impairment or combination of impairments is "not severe" if it does not significantly limit the claimant's physical or mental ability to do basic work activities. 20 C.F.R. §§ 404.1522, 416.922. If the claimant does not have a severe medically determinable impairment or combination of impairments, disability benefits are denied. 20 C.F.R. §§ 404.1520(c), 416.920(c). Here, the ALJ found that Petitioner had the following severe medically determinable impairments: "schizophrenia, generalized anxiety disorder, panic disorder, post-traumatic stress disorder, borderline personality disorder, substance abuse disorder, and bipolar disorder." AR 24.

The third step requires the ALJ to determine the medical severity of any impairments; that is, whether the claimant's impairments meet or equal a listed impairment under 20 C.F.R. Part 404, Subpart P, Appendix 1. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If the answer is yes, the claimant is considered disabled under the Social Security Act and benefits are awarded. 20 C.F.R. §§ 404.1520(d), 416.920(d). If the claimant's impairments neither meet nor equal one of the listed impairments, the claimant's case cannot be resolved at step three and the

**REPORT AND RECOMMENDATION - 4**

evaluation proceeds to step four. 20 C.F.R. §§ 404.1520(e), 416.920(e). Here, the ALJ concluded that Petitioner's above-listed medically determinable impairments, while severe, did not meet or medically equal, either singly or in combination, the criteria established for any of the qualifying impairments. AR 24-26.

The fourth step of the evaluation process requires the ALJ to determine whether the claimant's RFC is sufficient for the claimant to perform past relevant work. 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). An individual's RFC is her ability to do physical and mental work activities on a sustained basis despite limitations from her impairments. 20 C.F.R. §§ 404.1545, 416.945. An individual's past relevant work is work she performed within the last 15 years, or 15 years prior to the date that disability must be established, if the work lasted long enough for the claimant to learn to do the job and be engaged in SGA. 20 C.F.R. §§ 404.1560(b), 404.1565, 416.960(b), 416.965. Here, the ALJ concluded:

> After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform a full range of work at all exertional levels but with the following limitations: can perform simple, routine tasks; occasionally interact[ ] with supervisors and co-workers; never interact with the public; occasionally have changes to a work routine; and can be goal oriented but not production rate pace work, e.g., assembly line.

AR 26.

In the fifth and final step, if it has been established that a claimant can no longer perform past relevant work because of her impairments, the burden shifts to the Commissioner to show that the claimant retains the ability to do alternate work and to demonstrate that such alternate work exists in significant numbers in the national economy. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v), 404.1520(f), 416.920(f); *see also Garrison v. Colvin*, 759 F.3d 995, 1011 (9th Cir. 2014). If the claimant can do such other work, she is not disabled; if the claimant cannot do other work and meets the duration requirement, she is disabled. Here, the ALJ found that

**REPORT AND RECOMMENDATION - 5**

Plaintiff was unable to perform any past relevant work as a warehouse worker and inspector, but still was capable of working full-time in the following occupations: merchandise marker, routing clerk, and mail clerk. AR 29-30. Based on these findings, the ALJ concluded that Plaintiff was not under a disability at any time from May 1, 2021 (the alleged onset date) through January 24, 2024 (the date of the ALJ's decision). AR 30.

**B.    Analysis**

Plaintiff challenges the ALJ's RFC determination on two related grounds. First, she contends that the RFC is not supported by substantial evidence because the ALJ failed to properly evaluate the medical opinion evidence, including the prior administrative findings and consultative examiner opinions, and did not adequately explain why certain assessed functional limitations were omitted from the RFC. Pl.'s Brief at 7-11 (Dkt. 23). Second, Plaintiff argues that the ALJ did not properly assess her subjective symptom testimony, asserting that the ALJ discounted her allegations without providing the clear and convincing reasons required under the regulations and Ninth Circuit authority. *Id*. at 11-15. Plaintiff maintains that these errors undermined the ALJ's RFC determination and ultimate nondisability finding, warranting remand. Each of these arguments is addressed below.

    1.    <u>The ALJ Properly Considered the Medical Opinion Evidence</u>

In evaluating Plaintiff's impairments and their limiting impacts, the ALJ considered several competing medical opinions. AR 28-29. Plaintiff's first challenge relates to the ALJ's weighing of this opinion evidence, in particular (i) the state agency physicians Dr. Barney Greenspan and Dr. J. Michael Dennis, and (ii) consultive examiner Dr. Brad W. Levitt.

        *a.    The Standard for Evaluating Medical Opinions*

Because this case was filed after March 27, 2017, the revised regulations governing the evaluation of medical evidence apply. *See* 20 C.F.R. § 404.1520c. Under these regulations, the

ALJ is no longer required to give deference to any particular medical opinion, including treating source opinions. *Woods v. Kijakazi*, 32 F.4th 785, 792 (9th Cir. 2022); *see also* 20 C.F.R. § 404.1520c(a) ("We will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from your medical sources."). Instead, the ALJ evaluates the "persuasiveness" of the opinions based on several factors. *Id*. These are: (i) supportability, (ii) consistency, (iii) relationship with the claimant, (iv) specialization, and (v) any "other factors that tend to support or contradict a medical opinion." 20 C.F.R. §§ 416.920c(c)(1)-(5). The ALJ's duty to articulate a rationale for each factor varies. 20 C.F.R. §§ 404.1520c(a)-(b).

Supportability and consistency are the most important factors, and the ALJ, therefore, must explain how both factors were considered. *Woods*, 32 F.4th at 792; 20 C.F.R. § 416.920c(b)(2). The supportability factor looks inward at a medical opinion's bases; "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) . . ., the more persuasive the medical opinions . . . will be." 20 C.F.R. § 404.1520c(c)(1). The consistency factor, on the other hand, looks outward, comparing the opinion to the other evidence in the record; "[t]he more consistent a medical opinion . . . is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion . . . will be." 20 C.F.R. § 404.1520c(c)(2). The ALJ is only required to articulate findings on the remaining factors (treatment relationship, specialization, and any other factors) where "two or more medical opinions . . . about the same issue are both equally well-supported . . . and consistent with the record . . . but are not exactly the same." 20 C.F.R. §§ 404.1520c(b)(2)-(3).

Courts review the ALJ's persuasiveness determinations under these regulations using the substantial evidence standard. To be upheld, "an ALJ's decision, including the decision to

**REPORT AND RECOMMENDATION - 7**

discredit any medical opinion, must simply be supported by substantial evidence." *Woods*, 32 F.4th at 787.

        b.        *Drs. Greenspan and Dennis*

The ALJ found the prior administrative psychological findings of Drs. Greenspan and Dennis persuasive, explaining that both doctors adopted the prior ALJ's findings[1] and concluded that Plaintiff had mild limitations in understanding, remembering, or applying information, as well as in adapting or managing herself; and moderate limitations in interacting with others and in concentrating, persisting, or maintaining pace. AR 28 (citing AR 218-22, 229-33). The ALJ reasoned that these opinions were both internally supported by their review of Plaintiff's medical records and subjective complaints, and also consistent with the broader record. *Id*. In other words, the ALJ credited Drs. Greenspan's and Dennis's conclusions that Plaintiff remained capable of performing work within certain mental limitations.

Plaintiff, however, argues that the ALJ failed to fully account for the entirety of Drs. Greenspan's and Dennis's opinions when formulating her RFC. Pl.'s Brief at 9-10 (Dkt. 23). She emphasizes that both doctors also opined more specific functional limitations, including moderate restrictions in sustaining attention, maintaining regular attendance, completing a normal workweek, accepting instructions from supervisors, and interacting with the public. *Id*. at 9 (citing AR 220-22, 230-33). According to Plaintiff, they further assessed that she would be off task approximately 5% of the workday and limited to low-stress work with only brief and

---

[1] Plaintiff was previously found to be not disabled in an April 14, 2021 final decision, based on prior applications for a period of disability, disability insurance benefits, and supplemental security income. *See* AR 23-24 (discussing earlier decision from ALJ Wynne O'Brien-Persons). Relevant here, that decision concluded, at step four of the sequential process that Plaintiff "can perform simple, routine tasks"; "would be off task for approximately 5% of the workday"; "is limited to low stress work, defined as occasional public and coworker interaction that is brief and superficial, occasional changes in the work setting, and no fast paced production work." AR 194

**REPORT AND RECOMMENDATION - 8**

superficial contact with others and no fast-paced production demands. *Id*. Despite finding these opinions persuasive, says Plaintiff, the ALJ never actually evaluated or explained why these additional functional limitations were omitted from her RFC assessment. *Id*. at 9-10.

To the extent Plaintiff argues that the ALJ altogether failed to recognize Drs. Greenspan's and Dennis's opinions concerning Plaintiff's mental functional capacity, that assertion is not accurate. As Defendant notes, the ALJ squarely acknowledged that both doctors found only mild to moderate impairments across the broad areas of mental functioning, and discussed each of those functional areas and the related evidence throughout the decision. Def.'s Brief at 7 (Dkt. 25) (citing AR 24-25, 27-28). The undersigned therefore understands Plaintiff's argument to be directed less at whether the ALJ recognized the doctors' opinions in general, and more at the synergy between those opinions and the prior RFC determination by ALJ O'Brien-Persons. *See supra* at n.1. That is, because Drs. Greenspan and Dennis expressly adopted ALJ O'Brien-Persons's earlier RFC determination, Plaintiff maintains that the RFC determination in this case should reflect the same limitations, but it does not. Pl.'s Brief at 9-10.

Defendant responds that the RFC determination here is functionally the same as the prior RFC determination, even if it uses different wording. Def.'s Brief at 7 (Dkt. 25) (*comparing* AR 26 (the latest RFC determination)*, with* AR 194 (the prior RFC determination)). The undersigned agrees.

The prior RFC determination limited Plaintiff to "low stress work, defined as occasional public and coworker interaction that is brief and superficial, occasional changes in the work setting, and no fast paced production work." AR 194. Although the ALJ here did not use the phrase "low stress work," he effectively incorporated each of the same restrictions by limiting Plaintiff to simple, routine tasks, only occasional interaction with supervisors and coworkers, no public interaction, only occasional changes in work routine, and no production rate pace work.

**REPORT AND RECOMMENDATION - 9**

AR 26. Plaintiff does not seriously dispute this point, focusing instead on how the latest RFC determination omitted the prior RFC determination's 5% off task limitation, and thus did not fully reflect Drs. Greenspan's and Dennis's opinions. Pl.'s Reply at 4 (Dkt. 26). The undersigned disagrees.

At the November 29, 2023 hearing, the vocational expert testified that competitive employment would be eliminated if any individual were off task more than about 10% of the workday. AR 60-61 ("[I]t's been my experience that an individual could not be off task more than about 10% of the workday in order to sustain employment and, that 10% needs to be distributed throughout the workday."). Plaintiff argues that this figure was elicited in response to a stand-alone question that did not incorporate all of the other limitations in the latest RFC determination, and therefore lacks evidentiary value. Pl.'s Reply at 4 (Dkt. 26). But this argument misses the point. The record contains affirmative vocational expert testimony that jobs remain available unless off-task time exceeds 10%, and there is no evidence that a 5% limitation would upset the step-five outcome. 10% off task is work-preclusive, whereas 5% off task is not.

Accordingly, even assuming the omission was error, Plaintiff has not shown prejudice. Remand is not warranted on this issue.

    b.  Dr. Levitt

The ALJ also found the opinion of consultative examiner Dr. Levitt persuasive, explaining that Dr. Levitt concluded Plaintiff might benefit from certain workplace accommodations in order to "function more optimally" in future employment. AR 27-28 (citing AR 522-27). Specifically, Dr. Levitt noted that Plaintiff would benefit from clear and consistent rules and expectations, directions given slowly and clearly, shorter assignments, and the opportunity for frequent breaks. AR 527. The ALJ determined that Dr. Levitt's overall opinion was supported by a well-reasoned explanation grounded in clinical observations and

**REPORT AND RECOMMENDATION - 10**

psychological testing, and was also consistent with the medical record, including evidence of some memory and understanding deficits as well as Plaintiff's treatment history. AR 28. According to the ALJ, Plaintiff's assessed RFC incorporated Dr. Levitt's opinion by providing additional limitations that comported with his findings. *Id*.

Plaintiff, however, faults the ALJ's consideration of Dr. Levitt's opinion because, despite deeming it persuasive, the ALJ failed to include all of the specific accommodations Dr. Levitt identified in the RFC determination or explain why those accommodations were not included. Pl.'s Brief at 10 (Dkt. 23). Plaintiff contends that this failure violates the requirement that an ALJ must explain why persuasive medical opinion limitations conflict with an RFC determination, and therefore justifies remand for further consideration of Dr. Levitt's full opinion. *Id*. The Court disagrees.

First, as Defendant correctly notes, the accommodations Dr. Levitt identified were framed only as recommendations that "might be made in future educational and employment endeavors to allow [Plaintiff] to function more optimally." Def.'s Brief at 8 (Dkt. 25) (citing AR 527). These statements do not reflect medically necessary functional restrictions. Indeed, these suggestions appeared under the heading "recommendations" in Dr. Levitt's report. AR 526. The fact that Dr. Levitt repeatedly used equivocal language – stating that accommodations "might be made," information "might be presented," and techniques "might be important" – helps prove this point. AR 527. Because the RFC reflects the most a claimant can do in an ordinary work setting despite work-related limitations, and not potential strategies to optimize future performance, the ALJ was not required to incorporate these discretionary recommendations into the RFC as Plaintiff insists. *See Valentine v. Comm'r of Soc. Sec. Admin.*, 574 F.3d 685, 691-92 (9th Cir. 2009) (physician's opinion that claimant "is less likely to have difficulty with" certain tasks is a recommendation and not a statement that claimant is only capable of the recommended

**REPORT AND RECOMMENDATION - 11**

tasks); *Carmickle v. Comm'r of Soc. Sec. Admin.*, 533 F.3d 1155, 1165 (9th Cir. 2008) (finding that an ALJ may reasonably decline to adopt the opinion of a physician "offered as a recommendation, not an imperative").

Second, even assuming the recommendations carried some functional significance here, the RFC arguably accounts for them in substance. While Dr. Levitt suggested that Plaintiff might benefit from clarity and straightforwardness in the workplace, limited distractions, and short breaks, the RFC reasonably captures the same type of structured, low-demand work environment: it limits Plaintiff to simple, routine tasks; only occasional interaction with supervisors and coworkers and no interaction with the public; only occasional changes to work routine; and work that is goal oriented but not performed at a production rate pace. *Compare* AR 26-27, with AR 527.

Accordingly, Plaintiff has not shown that the ALJ erred in evaluating Dr. Levitt's opinion. Remand is not warranted on this issue.

    2.    <u>The ALJ Reasonably Discounted Plaintiff's Subjective Complaints</u>

Plaintiff's second challenge is that the ALJ improperly evaluated her testimony regarding the severity of her symptoms. Plaintiff claims she cannot work due to a bipolar disorder, generalized anxiety, depression, post-traumatic stress disorder, panic attacks, and hypersomnia. AR 343. She testified that these conditions leave her stressed, isolated, overwhelmed, and excessively sleepy – causing her to miss appointments and preventing her from going alone to church, the grocery store, or even family gatherings. AR 43-50. As a result, she stated that she spends most of her time sleeping and watching television in her bedroom. *Id*.

    *a.*    *The Standard for Evaluating Subjective Complaints*

As the trier-of-fact, the ALJ is in the best position to make credibility determinations, and for this reason, his determinations are entitled to great weight. *Reddick v. Chater*, 157 F.3d 715,

**REPORT AND RECOMMENDATION - 12**

722 (9th Cir. 1998).  An ALJ is not "required to believe every allegation of disabling pain" or other nonexertional impairment.  *Fair*, 885 F.2d at 603.  However, if an ALJ discredits a claimant's subjective symptom testimony, the ALJ must articulate specific reasons for doing so.  *Greger v. Barnhart*, 464 F.3d 968, 972 (9th Cir. 2006).

In evaluating a claimant's subjective symptom testimony, the ALJ engages in a two-step analysis.  *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035-36 (9th Cir. 2007).  "First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment 'which could reasonably be expected to produce the pain or other symptoms alleged.'"  *Id*. at 1036 (quoting *Bunnell v. Sullivan*, 947 F.2d 341, 344 (9th Cir. 1991)).  Second, if such objective medical evidence exists, and the ALJ has not determined that the claimant is malingering, the ALJ must provide clear and convincing reasons before rejecting the claimant's testimony regarding the severity of the claimant's symptoms.  *Id*.

The ALJ may engage in ordinary techniques of credibility evaluation, including consideration of (i) the claimant's reputation for truthfulness and inconsistencies in claimant's testimony, or between claimant's testimony and conduct; as well as (ii) the claimant's daily activities, the claimant's work record, and testimony from physicians and third parties concerning the nature, severity, and effect of the symptoms of which the claimant complains.  *Thomas v. Barnhart*, 278 F.3d 947, 958-59 (9th Cir. 2002).  Also, the ALJ may consider location, duration, and frequency of symptoms; factors that precipitate and aggravate those symptoms; amount and side effects of medications; and treatment measures taken by claimant to alleviate those symptoms.  *See* SSR 16-3p, available at 2017 WL 518034 (October 25, 2017).  In short, it is solely within the ALJ's province to assess the credibility of the claimant's testimony.  *Fair v. Bowen*, 885 F.2d 597, 604 (9th Cir. 1989).

**REPORT AND RECOMMENDATION - 13**

Generalized findings will not satisfy this standard, though. The reasons an ALJ provides for rejecting a claimant's symptom testimony "must be sufficiently specific to allow a reviewing court to conclude the adjudicator rejected the claimant's testimony on permissible grounds and did not arbitrarily discredit a claimant's testimony regarding pain." *Brown-Hunter v. Colvin*, 806 F.3d 487, 493 (9th Cir. 2015) (quoting *Bunnell*, 947 F.2d at 345-46). This requires that the ALJ "identify what testimony is not credible and what evidence undermines the claimant's complaints." *Id*. at 493 (quoting *Reddick*, 157 F.3d at 722); *see also Smartt v. Kijakazi*, 53 F.4th 489, 499 (9th Cir. 2022) (in other words, "the 'clear and convincing' standard requires an ALJ to show his work").

On appeal, the district court's role is to review, not redo, this work. So long as there is substantial evidence for the ALJ's decision – even if there is another interpretation of the evidence – courts will not engage in second-guessing. *Thomas*, 278 F.3d at 959. When the ALJ's rationale for rejecting a claimant's testimony is "clear enough that it has the power to convince," the Court must affirm whether the Court is personally persuaded by the analysis or not. *Smartt*, 53 F.4th at 499.

    b.  *The ALJ's Evaluation of Plaintiff's Subjective Complaints*

The ALJ found that Plaintiff's impairments could reasonably be expected to cause the alleged symptoms, but that her statements concerning the intensity, persistence, and limiting effects of those symptoms were not entirely consistent with the medical evidence and other evidence in the record. AR 27. The ALJ's justification in this regard amounts to clear and convincing reasons for questioning Plaintiff's symptom testimony.

First, the ALJ found that Plaintiff's claims exceed the support in the medical record. AR 27. Specifically, whereas Plaintiff contends that her mental impairments are altogether debilitating, the ALJ noted how the medical record shows that Plaintiff often had no reason to be

**REPORT AND RECOMMENDATION - 14**

"up and about," and at times reported sleeping less. AR 27 (citing AR 414, 531-32). The ALJ also observed that, despite a few marked notations of memory deficit, most of the records show Plaintiff's memory was normal and that she had good insight and judgment. *Id*. (citing AR 415, 427, 432, 437, 441, 446, 516, 532); *see also* AR 117, 124, 126, 136, 139, 145, 414. This is not to say that Plaintiff does not suffer from mental impairments that impact her ability to work. She unquestionably does, as indicated by the ALJ's identification of Plaintiff's several severe mental impairments at step two of the sequential process, and also by accounting for those impairments' limitations at step four of the sequential process. AR 24, 26-27. But the medical record conflicts with the claimed extent of Plaintiff's mental health symptoms. Such evidence was appropriately considered in assessing Plaintiff's subjective testimony. *See Smartt*, 53 F.4th at 498 ("When objective medical evidence in the record is inconsistent with the claimant's subjective testimony, the ALJ may indeed weigh it as undercutting such testimony."); *Carmickle*, 533 F.3d at 1161 ("Contradiction with the medical record is a sufficient basis for rejecting the claimant's subjective testimony."); *Burch v. Barnhart*, 400 F.3d 676, 681 (9th Cir. 2005) ("Although lack of medical evidence cannot form the sole basis for discounting pain testimony, it is a factor that the ALJ can consider in [her] credibility analysis.").

Second, the ALJ discussed medical records establishing that Plaintiff's symptoms improved with treatment. For example, while Plaintiff indicated she is able to manage her anxiety without medications, the ALJ reported that Plaintiff's visual hallucinations could be controlled with medications, and Plaintiff's overall symptomology improved when she was compliant with taking medications and attending scheduled medical appointments. *Id*. at AR 27-28 (citing AR 414, 432, 436-37, 441, 445, 475, 500, 515, 531-32, 534, 538). An improvement of conditions with medical treatment is a relevant factor to consider in evaluating Plaintiff's testimony. *See* 20 C.F.R. §§ 404.1529(c)(3)(iv), 416.929(c)(3)(iv) (effectiveness of medical

**REPORT AND RECOMMENDATION - 15**

treatment); *Wellington v. Berryhill*, 878 F.3d 867, 876 (9th Cir. 2017) ("[E]vidence of medical treatment successfully relieving symptoms can undermine a claim of disability."); *see also Warre v. Comm'r of Soc. Sec. Admin.*, 439 F.3d 1001, 1006 (9th Cir. 2006) ("Impairments that can be controlled effectively with medication are not disabling for the purpose of determining eligibility for SSI benefits.").[2]

Third, the ALJ concluded that Plaintiff's daily activities suggest that her mental health symptoms are not disabling. AR 27. In particular, the ALJ noted that, during Plaintiff's December 2022-January 2023 inpatient psychiatric hospitalization, she was able to attend group therapy and independently complete her activities of daily living. *Id.* (citing AR 467 ("She is able to take care of her [activities of daily living].")). The discharge note further confirmed that Plaintiff was "not gravely disabled," could perform self-care without assistance, and was released with no restrictions. *Id.* (citing AR 469-70 (released with "no restrictions" on "activity level," and "[p]atient is able to complete [activities of daily living] on her own and is not gravely disabled"), AR 476 ("I do think she will make a timely and significant improvement as a result of this inpatient psychiatric hospitalization.").[3] In this way, the ALJ found that certain activities

---

[2] Plaintiff does not dispute that her symptoms improved with treatment, but implies that she missed some of her medical appointments because of her mental condition. Pl.'s Brief at 14-15 (Dkt. 23) (citing *Garrison v. Colvin*, 759 F.3d 995, 1017-18 (9th Cir. 2014)). The Ninth Circuit has noted that "we do not punish the mentally ill for occasionally going off their medication when the record affords compelling reason to view such departs from prescribed treatment as part of claimants' underlying mental afflictions." *Garrison*, 759 F.3d at 1018 n.24. But Plaintiff offers no evidence that this is the case; simply saying it does not make it so. Regardless, even if the ALJ erred by discounting Plaintiff's claims because of treatment noncompliance, this error is harmless because, as discussed herein, the ALJ provided other legally sufficient reasons to discount Plaintiff's reported symptoms. *See Carmickle*, 533 F.3d at 1163 (upholding an adverse credibility finding where only two of the ALJ's four reasons to discredit the claimant were valid).

[3] Plaintiff argues that functioning in a structured inpatient environment is not a reliable measure of her ability to function outside the hospital. Pl.'s Brief at 12-13 (Dkt. 23). Defendant responds that Plaintiff mischaracterizes the discharge findings: the note did not merely reflect

**REPORT AND RECOMMENDATION - 16**

demonstrate Plaintiff's abilities in several particular areas of mental functioning that, although limited, signaled an ability to work, albeit with the limitations accounted for in Plaintiff's RFC. *See Smartt*, 53 F.4th at 499 (a claimant's "daily activities 'may be grounds for discrediting the claimant's testimony to the extent that they contradict claims of a totally debilitating impairment.'") (quoting *Molina v. Astrue*, 674 F.3d 1104, 1121 (9th Cir. 2012)).

Fourth, much of Plaintiff's argument relating to the ALJ's evaluation of her subjective complaints relies on instances in the record – including Plaintiff's own testimony that the ALJ questioned – where her impairments and related symptoms are verified. *See* Pl.'s Brief at 13-14 (Dkt. 23). These references confirm that Plaintiff suffers from certain impairments and that such impairments impact her ability to work. But this is understood and undisputed. The ALJ already acknowledged that Plaintiff suffers from several severe impairments that significantly limit her ability to perform basic work activities. AR 24. However, the issue is not whether such impairments, symptoms, and limitations exist, but the extent to which they prevent Plaintiff from working at all. To that end, where Plaintiff's argument hinges upon the mere existence of limiting impairments, it misses the point. The ALJ specifically accounted for Plaintiff's impairments and corresponding limitations within his RFC. AR 24, 26-27. Plaintiff does not identify any evidence in the record showing that these limitations are insufficient to accommodate her mental health conditions and symptoms.

These reasons amount to clear and convincing explanations as to why the ALJ found Plaintiff's testimony not entirely credible. Crucially, the Court's role is not to decide whether Plaintiff is disabled under the applicable statutes and regulations, or even whether she suffers

---

functioning with inpatient care, but explicitly documented that Plaintiff could independently complete her activities of daily living with no restrictions. Def.'s Brief at 4-5 (Dkt. 25) (citing AR 469-70). Defendant's interpretation of the discharge note is not unreasonable. *See Ludwig*, 681 F.3d at 1051 (courts defer to rational interpretation of the record).

**REPORT AND RECOMMENDATION - 17**

from chronic, disabling limitations. In assessing Plaintiff's credibility, the ALJ was not focused on whether Plaintiff had pain or limiting mental disorders, but on whether these impairments prevent her from engaging in any full-time work. It is the reasonableness of *these* findings that the Court must review on appeal. On those points, Plaintiff identifies conflicting evidence in support of her position. Even though this conflicting evidence may not have been given the weight that Plaintiff would have preferred, the ALJ's decision to question her subjective symptom allegations contains clear and convincing reasons for doing so. The Court uses – as it must – that standard. Accordingly, the ALJ will not be second-guessed given the justifications provided. *Batson*, 359 F.3d at 1193 ("[T]he Commissioner's findings are upheld if supported by inferences reasonably drawn from the record, and if evidence exists to support more than one rational interpretation, we must defer to the Commissioner's decision.").

Accordingly, Plaintiff has not shown that the ALJ erred in evaluating her subjective complaints. Remand is not warranted on this issue.

## IV. CONCLUSION

The ALJ, as fact-finder, must weigh the evidence, draw inferences from facts, and determine credibility. If the evidence is susceptible to more than one rational interpretation, one of which is the ALJ's, the Court may not substitute its interpretation for that of the ALJ. *Key v. Heckler*, 754 F.2d 1545, 1549 (9th Cir. 1985). The ALJ has provided reasonable and rational support for his well-formed conclusions, even if such evidence is susceptible to a different interpretation. Accordingly, the ALJ's decisions as to Plaintiff's disability claim were based upon proper legal standards and supported by substantial evidence. The Commissioner's decision should be affirmed and Plaintiff's Complaint for Review should be denied.

## V. **RECOMMENDATION**

Based on the foregoing, IT IS HEREBY RECOMMENDED that the decision of the Commissioner be AFFIRMED, that Plaintiff's Complaint for Review (Dkt. 1) be DENIED, and this action be DISMISSED in its entirety, with prejudice.

Pursuant to District of Idaho Local Civil Rule 72.1(b)(2), a party objecting to a Magistrate Judge's recommended disposition "must serve and file specific, written objections, not to exceed twenty (20) pages . . . within fourteen (14) days . . ., unless the magistrate or district judge sets a different time period." Additionally, the other party "may serve and file a response, not to exceed twenty (20) pages, to another party's objections within fourteen (14) days after being served with a copy thereof."



DATED: February 9, 2026

_____
Honorable Raymond E. Patricco
Chief U.S. Magistrate Judge

**REPORT AND RECOMMENDATION - 19**